```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

GERALD CHAMALES CORPORATION,   :
                               :     HONORABLE JOSEPH E. IRENAS
          Plaintiff,           :
                               :     CIVIL ACTION NO. 07-1947 (JEI)
     v.                        :
                               :              OPINION
OKI DATA AMERICAS, INC. AND    :
BARRY L. MCELREATH,            :
                               :
          Defendants,          :
                               :
     v.                        :
                               :
GERALD CHAMALES CORPORATION    :
AND GERALD CHAMALES¹,          :
                               :
          Counterclaim-        :
          Defendants.          :
```

**APPEARANCES:**

PIETRAGALLO, GORDON, ALFANO, BOSICK & RASPANTI, LLP
BY: Kevin E. Raphael, Esq.
    Christopher A. Iacono, Esq.
    William L. Carr, Esq.
1818 Market Street, Suite 3402
Philadelphia, PA 19103
    Counsel for Plaintiff/Counterclaim-Defendant Gerald Chamales
    Corporation and Counterclaim-Defendant Gerald Chamales

OBERMAYER REBMANN MAXWELL & HIPPEL LLP
BY: Stephen D. Schrier, Esq.
    Matthew A. Green, Esq.
Suite 300, 20 Brace Road
Cherry Hill, NJ 08034
    Counsel for Defendants/Counterclaimants Oki Data Americas,
    Inc. and Barry L. McElreath

---

    ¹Although Gerald Chamales is not a plaintiff, Oki Data
Americas, Inc. apparently joined him as a counterclaim-defendant
pursuant to Fed. R. Civ. P. 13(h) and 20(a)(2).

**IRENAS,** Senior District Judge:

Presently before this Court is Counterclaim-Defendant Gerald Chamales's motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  For the reasons set forth below, the motion will be denied.

**I.**

A.

In September 2006 Plaintiff/Counterclaim-Defendant, Gerald Chamales Corporation ("GCC"), filed a complaint alleging fraud and negligent misrepresentation against Defendants/Counterclaimants Oki Data Americas, Incorporated ("Oki Data") and Oki Data's Vice President Barry L. McElreath in the United States District Court for the Central District of California (the "California Court").[2]  While the case was pending in the California Court, McElreath filed a motion to dismiss for lack of personal jurisdiction.[3]  In an order and opinion dated April 13, 2007, the California Court denied McElreath's motion and held that it may properly assert specific jurisdiction over

---

[2]Oki Data answered the complaint on October 15, 2006 and did not assert any counterclaims at that time.

[3]As more fully explained below, many of the same facts that McElreath relied upon in support of his motion to dismiss for lack of personal jurisdiction are identical to those facts that Chamales relies upon here in his motion.

McElreath in California. (Oki Data Cert., Ex. A).[4]

Also on April 13, 2007, upon Oki Data's motion, the California Court transferred venue to this Court pursuant to 28 U.S.C. § 1404(a).  On October 5, 2007, Oki Data filed an amended answer, adding counterclaims for fraud and negligent misrepresentation against GCC and its Chairman, Gerald Chamales.[5] Chamales now seeks to dismiss the counterclaim against him on the basis of lack of personal jurisdiction.

B.

This action arises from a two-part business deal in which MKG Imaging Solutions, Inc. ("Imaging Solutions"), a wholly-owned subsidiary of Oki Data, acquired MKG Cartridge Systems, Inc. ("Cartridge Systems"), a corporation which was eighty-five percent owned by Chamales.[6]  (Cntclaim ¶ 7).[7]  In conjunction

---

[4] References to the "Oki Data Cert.," "Chamales Aff't," and "McElreath Decl." pertain to the Certification of Counsel in Support of Oki Data's Opposition to Counterclaim/Defendant Gerald Chamales's Motion to Dismiss, Affidavit of Gerald Chamales, and Certification of Barry McElreath in Support of Oki Data's Opposition to Gerald Chamales's Motion to Dismiss, respectively.

[5] This Court has jurisdiction pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367(a).

[6] Oki Data created Imaging Solutions to acquire Cartridge Systems's assets and to enter into a manufacturing and supply agreement with GCC.  (Cntclaim ¶ 2).

[7] References to "Cntclaim" pertain to the counterclaim set forth in Defendant Oki Data's Amended Answer to Complaint and Counterclaim, filed on October 5, 2007.

with this acquisition, pursuant to a Manufacturing and Supply Agreement dated April 29, 2005, (the "Supply Agreement") GCC agreed to purchase toner cartridges and other products exclusively from Imaging Solutions. (Cntclaim ¶ 17).[8]

Oki Data is a New Jersey corporation with its principal place of business in Mount Laurel, New Jersey.[9] (Cntclaim ¶ 1). McElreath is a resident of the state of New Jersey. (McElreath Decl. at ¶ 4). Chamales is a resident and citizen of California. (Chamales Aff't ¶ 1). Chamales does not own real property in New Jersey nor does he maintain a mailing address or telephone number there. (*Id.*). GCC is a California corporation with its principal place of business in Los Angeles, California. (Chamales Aff't ¶ 2; Cntclaim ¶ 3).

Chamales traveled to Oki Data's office in Mount Laurel, New Jersey to meet with McElreath and representatives from Cartridge Systems on August 19, 2004, to discuss the potential sale of Cartridge Systems' assets to Oki Data or a subsidiary. (Cntclaim ¶ 9; Chamales Aff't ¶ 3). After this meeting, Chamales and

---

[8] Prior to this acquisition, Cartridge Systems, a supplier of toner cartridges and other imaging products, maintained an agreement with GCC, wherein GCC agreed to purchase products exclusively from Cartridge Systems. (Cntclaim ¶ 8). According to the Counterclaim, Oki Data did not want to acquire the assets of Cartridge Systems unless it could continue to sell products to its largest customer, GCC.

[9] Imaging Solutions is a Canadian corporation. (Cntclaim ¶ 2). Prior to its acquisition, Cartridge Systems was also a Canadian corporation. (Cntclaim ¶ 6).

McElreath corresponded via telephone and electronic mail to negotiate the terms of the proposed deal. (Chamales Aff't at ¶ 5; McElreath Decl. at ¶ 4).  McElreath states that he engaged in such correspondence with Chamales on "numerous" occasions. (McElreath Decl. at ¶ 3).  McElreath participated in many of these communications from Oki Data's New Jersey office or from his personal residence in New Jersey.  (McElreath Decl. at ¶ 4).

As a result of these negotiations, Imaging Solutions agreed to purchase the assets of Cartridge Systems pursuant to an Asset Purchase Agreement ("Purchase Agreement"), dated April 29, 2005. (Oki Data Cert., Ex. E).  While the President of Cartridge Systems, Michael Grist, signed the Purchase Agreement on behalf of Cartridge Systems, Chamales also signed the Purchase Agreement and agreed to be bound by certain provisions of the Purchase Agreement in his individual capacity. (*Id.*).

On the same day Imaging Solutions and GCC executed the Supply Agreement which provided that Imaging Solutions was to be the exclusive supplier of certain products to GCC for three years.  (Oki Data Cert., Ex. F).  Chamales signed the Supply Agreement as President of GCC.  (*Id.*).

The Purchase Agreement and the Supply Agreement both stipulated that they were to be governed by the laws of the state

of New Jersey.[10]  (Oki Data Cert., Exs. E & F).  Both agreements contained notice provisions that listed Chamales as the individual to whom notice should be sent on behalf of GCC and Cartridge Solutions.  (*Id.*).  Notice to Oki Data or Imaging Solutions was to be directed to Oki Data's New Jersey address.  (*Id.*).

Based on Imaging Solutions' alleged default in performing the terms of the Supply Agreement, GCC brought a two-count complaint alleging fraud and negligent misrepresentation against Oki Data and McElreath.  Oki Data counterclaimed against GCC and Chamales for fraudulent misrepresentation and negligent misrepresentation, alleging that GCC and Chamales made material misrepresentations to Oki Data to induce its purchase of Cartridge Systems.

**II.**

Oki Data bears the burden of proving that this Court has

---

[10] Both the Purchase Agreement and the Supply Agreement provided that disputes "arising out of or relating to" the agreement or the breach thereof should be submitted to mediation, and if not resolved by mediation, then to binding arbitration. (Oki Data Cert., Ex. E).  The contemplated mediations and arbitrations were to be held in Toronto, Ontario. (*Id.*).  The applicability of these arbitration clauses to the parties' claims is the subject of a pending motion for summary judgment filed by Oki Data.

personal jurisdiction over Chamales.[11]  *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 94 (3d Cir. 2004).  Because a Rule 12(b)(2) motion "'requires resolution of factual issues outside the pleadings[,] . . . [Oki Data] must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits and competent evidence.'"  *Id*. (quoting *Patterson v. FBI*, 893 F.2d 595, 603-604 (3d Cir. 1990)).  Oki Data cannot rely solely on the pleadings to overcome a 12(b)(2) motion, but rather, it must rely on actual proofs, not mere allegations.  *Id*.

A federal court sitting in New Jersey has jurisdiction over the parties to the extent provided under New Jersey state law.  *See* Fed. R. Civ. P. 4(e);  *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998).  Under New Jersey's long arm statutes, the courts may exercise personal jurisdiction to the full extent permitted by the United States Constitution.  *Miller Yacht Sales,* 384 F.3d at 96.

Due process requires that Chamales have certain "minimum contacts" with the forum state such that the court's exercise of jurisdiction over him comports with "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  "[M]inimum contacts must have a basis in

---

[11] Since Oki Data filed its counterclaim against Chamales, then a non-party to this litigation, it is functionally the plaintiff on that claim and bears the burden of proving that this Court has personal jurisdiction over Chamales.

'some act by which [Chamales] purposefully avails [him]self of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Asahi Metal Indust. Co. v. Superior Court*, 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Minimum contacts may be met if Oki Data can adequately show the existence of either general or claim-specific jurisdiction. *See Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001).

> General jurisdiction is based upon [Chamales's] 'continuous and systematic contacts' with the forum and exists even if [Oki Data's] cause of action arises from [Chamales's] non-forum related activities. In contrast, specific jurisdiction is present only if [Oki Data's] cause of action arises out of [Chamales's] forum-related activities, such that [Chamales] 'should reasonably anticipate being haled into court' in that forum.

*Id.* at 255 (citations omitted). "A 'relationship among [Chamales], the forum, and the litigation' is the essential foundation" of specific jurisdiction. *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Finally, "[m]inimum contacts must have a basis in 'some act by which [Chamales] purposefully avails [him]self of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Asahi Metal Indust. Co.*, 480 U.S. at 109 (quoting *Burger King Corp.*, 471 U.S. at 475).

If there are sufficient minimum contacts, a court may exercise jurisdiction only after it determines that doing so would comport with "'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co.,* 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463).

### III.

Under the traditional minimum contacts analysis, "[s]pecific jurisdiction over [Chamales will] exist[] when [he] has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'"  *Miller Yacht Sales, Inc.*, 384 F.3d at 96 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).[12]

"'Mail and telephone communications sent by [Chamales] into the forum may count toward the minimum contacts that support jurisdiction.'"  *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001)(quoting *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*

---

[12] Oki Data does not address Chamales's arguments regarding general jurisdiction.  Because Chamales's contacts with New Jersey were limited to the single trip to Oki Data's office in Mount Laurel and to the various communications with McElreath, Chamales's contacts with New Jersey were not continuous and systematic.  Thus, this Court could not exercise personal jurisdiction over Chamales on the basis of general jurisdiction.

9

988 F.2d 476, 482 (3d Cir. 1993).[13]  *See, e.g.*, *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 318 (3d Cir. 2007) (communications consisting of telephone calls and brochures mailed to plaintiffs in Pennsylvania to induce them to enter into agreement for spa services were sufficient to establish personal jurisdiction over foreign corporation); *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992) (holding that personal jurisdiction was proper over Louisiana residents who acted as local counsel for plaintiff in a real estate transaction where the parties engaged in numerous phone calls and correspondence and met in New Jersey on one occasion); *Lebel v. Everglades Marina, Inc.*, 115 N.J. 317, 324-25 (1989) (personal jurisdiction appropriate where "defendant allegedly telephoned the buyer in New Jersey to iron out the details of the contract, mailed the contract to the buyer in New Jersey for signing in New Jersey, and received payment from the plaintiff, who defendant knew was a New Jersey resident").

Here, Chamales traveled to New Jersey to discuss the sale of Cartridge Solutions and engaged in subsequent correspondence on numerous occasions with McElreath in New Jersey to negotiate the terms of the parties' agreements via telephone and electronic

---

[13] The determination as to whether personal jurisdiction exists is typically made on a claim-by-claim basis.  *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 318 n.3 (3d Cir. 2007). However, because the claims brought by Oki Data – negligent misrepresentation and fraudulent misrepresentation – derive from the identical set of facts, personal jurisdiction under these claims will be analyzed collectively.  *Id.*

mail. Chamales made the alleged misrepresentations to Oki Data and McElreath during the course of these negotiations, and thus, the litigation here "arise[s] out of or relate[s] to" Chamales's activities in the forum state. *Helicopteros*, 466 U.S. at 414; *see also Carteret Sav. Bank, FA*, 954 F.2d at 146 (3d Cir. 1992) ("Personal jurisdiction may be exercised over a non-resident who, while present in the forum state, makes a deliberate misrepresentation during the course of negotiations or other direct oral communications.").

Chamales makes two arguments against finding jurisdiction based on these negotiations. First, Chamales argues that, because the negotiations during his New Jersey trip only concerned the sale of Cartridge Solutions and not the Supply Agreement, such negotiations are unrelated to Oki Data's counterclaims, which Chamales argues derive from the negotiations concerning the Supply Agreement only.

However, the facts set forth in the pleadings and affidavits submitted in support of these motions belie this argument. Both the Supply Agreement and the Purchase Agreement were inextricably related and arose from the same set of negotiations. Indeed, the execution of the Supply Agreement was an express condition precedent to the consummation of the Purchase Agreement. *See* Oki Data Cert., Ex. E, ¶ 10.12.

Second, Chamales states that he did not know he was

11

corresponding with anyone in New Jersey during the course of such negotiations.  (Chamales Aff't at ¶ 5).  However, given that Chamales had already traveled to Oki Data's office to meet with McElreath there, it is difficult to conceive that Chamales did not realize that there was a strong likelihood that McElreath was located in New Jersey for subsequent negotiations.  *See Ipoint Ventures, LLC v. Pequot Capital Mgmt.*, 2005 U.S. Dist. LEXIS 16039, at *18 (D.N.J. July 29, 2005)("[A] reasonable inference can be made that a resident of a state is most likely to access [email accounts and cell phone calls] within the forum state.").

Moreover, there were contractual provisions that should have put Chamales on notice such that he could reasonably anticipate being haled into court in New Jersey.  Under the notice provisions of both the Supply Agreement and the Purchase Agreement, Oki Data's Mount Laurel address in New Jersey is listed as the recipient of required notices or other communications under these agreements.  Likewise, the Supply Agreement and the Purchase Agreement both contained a choice of law provision providing that the laws of New Jersey were to govern the agreements.  *See Panella v. O'Brien*, 2006 U.S. Dist. LEXIS 59880, at *10-11 (D.N.J. 2006) (holding that a choice of law provision contained in an agreement provided defendants with notice of being haled into a court within the forum state).

Oki Data has established that Chamales purposefully availed

12

himself of New Jersey and set forth the requisite relationship among Chamales, New Jersey, and Oki Data's claims of fraud and misrepresentation.[14]

The conclusion that Oki Data has established sufficient contacts between Chamales and New Jersey to subject him to this Court's jurisdiction, is proper even though many of those contacts were made by Chamales in his role as an officer of GCC. In *Educational Testing Service v. Katzman*, this Court held that actions taken by an individual within New Jersey in his "corporate capacity" may be imputed to a defendant corporate officer individually. 631 F. Supp. 550, 556 (D.N.J. 1986). The Court noted that "[i]t would be anomalous, and would defeat the purposes of the law creating substantive liability, to permit a corporate officer to shield himself from jurisdiction by means of

---

[14] It is significant that the California Court determined that McElreath, a New Jersey resident, could be subject to personal jurisdiction in California based on the negotiations over the Purchase and Supply Agreements. (Oki Data Cert., Ex. A). On behalf of Oki Data and Imaging Solutions, McElreath participated in all of the negotiations with GCC and Cartridge Solutions concerning the Purchase and Supply Agreements from New Jersey. (*Id.*). Chamales participated in many of these negotiations with McElreath. (McElreath Decl. at ¶ 3). During the course of these negotiations, McElreath did not travel to California. (Oki Data Cert., Ex. A). The California Court held that, based on these negotiations alone, McElreath maintained sufficient contacts with California such that he could be subject to personal jurisdiction. (*Id.*). The California Court's holding further supports this Court's conclusion that jurisdiction over Chamales in New Jersey is appropriate because such holdings analyze many of the same facts concerning the negotiations and conclude that personal jurisdiction may be exercised over McElreath in California and over Chamales in New Jersey.

the corporate entity, when he could not interpose the same shield as a defense against substantive liability." *Id.* (quoting *Donner v. Tams-Witmark Music Library, Inc.*, 480 F. Supp. 1229, 1234 (E.D. Pa. 1979); *see also Acteon, Inc. v. Vista Dental Products*, 2006 U.S. Dist. LEXIS 27584, at *12-14 (D.N.J. May 3, 2006).

Chamales, as sole owner of GCC and an eighty-five percent owner of Cartridge Systems, was directly involved with the negotiations concerning the Supply Agreement and the Purchase Agreement, and the basis of Oki Data's counterclaim derives from the representations made by Chamales during such negotiations. Additionally, Chamales signed both the Supply Agreement and the Purchase Agreement in his individual capacity.[15]

Finally, this Court must consider whether the exercise of personal jurisdiction "comport[s] with fair play and substantial justice." *Miller Yacht Sales, Inc.*, 384 F.3d at 97 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). Fair play and substantial justice requires a fairness inquiry that includes other considerations, beyond purposeful availment and

---

[15] Because Oki Data has established personal jurisdiction over Chamales under the traditional minimum contacts test, it is not necessary to reach Oki Data's argument that Chamales would be subject to specific jurisdiction under the "effects test" as set forth in *Calder v. Jones*, 465 U.S. 783 (1984). *See Miller Yacht Sales, Inc.*, 384 F.3d at 96 n.2 (3d Cir. 2004) (concluding it unnecessary to reach question of whether defendant would be subject to jurisdiction under the effects test where sufficient contacts with New Jersey were established under traditional personal jurisdiction test).

the relationship of the parties, that would render jurisdiction unreasonable. *Id*. These considerations include "the burden on [Chamales], the forum State's interest in adjudicating the dispute, [Oki Data's] interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476 (1985)).

Chamales has not put forth any additional circumstances that would render jurisdiction in New Jersey particularly burdensome. As to New Jersey's interest in adjudicating the dispute, this Court has recognized that "the state of New Jersey ha[s] an interest in protecting New Jersey residents against potential fraud or misrepresentations in business transactions." *See Panella,* 2006 U.S. Dist. LEXIS at *15.

Because the counterclaims against GCC and Chamales involve the identical set of facts, it would be in the interest of judicial economy to avoid dismissal of Chamales, thereby avoiding two simultaneous lawsuits on identical claims. Further, the California Court already transferred venue of this action to New Jersey on the basis of 18 U.S.C. § 1404(a)(". . . for the convenience of the parties and witnesses, . . . ."). It would be somewhat incongruous to now dismiss the action as to Chamales where all of the parties' claims derive from the identical set of

15

facts. The exercise of personal jurisdiction over Chamales in New Jersey therefore comports with fair play and substantial justice.

### IV.

For the foregoing reasons, the motion to dismiss for lack of personal jurisdiction by Counterclaim-Defendant Chamales will be denied. The Court will issue an appropriate order.

Dated: June 6, 2008.

s/ *Joseph E. Irenas*
**JOSEPH E. IRENAS, S.U.S.D.J.**